IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANTONIO SIMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 1:19-cv-01613 (RDA-MSN) |
| ) | |
| ACRO SERVICE CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### ORDER

This matter comes before the Court on Defendant Acro Service Corporation's ("Defendant Acro") Motion to Dismiss and Compel Arbitration or Stay All Proceedings ("Defendant Acro's Motion to Dismiss") (Dkt. 20), and Defendant KBR's Motion to Dismiss and to Compel Arbitration or Stay All Proceedings ("Defendant KBR's Motion to Dismiss") (Dkt. 26) (collectively, the "Motions"). Considering the Plaintiff Antonio Simpson's ("Plaintiff") Complaint (Dkt. 1), the Motions, the Memorandum in Support of Defendant Acro's Motion to Dismiss (Dkt. 21), and the Memorandum in Support of Defendant KBR's Motion to Dismiss (Dkt. 27), it is hereby ORDERED that the Motions (Dkt. Nos. 20; 26) are GRANTED; IT IS FURTHER ORDERED that the parties proceed in arbitration in accordance with the terms of the Arbitration Agreement (Dkt. 21-2); and IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED, with prejudice.

### I.  BACKGROUND

#### A.  Factual Background

On April 15, 2019, Plaintiff was "hired by [ ] Defendants to work on a contract that was to last until August [of] 2022." *Id*. at ¶ 4. Defendant Acro is a staffing agency that "provid[es]

services to private and governmental entities." *Id*. at ¶ 12.  One of the services Defendant Acro provides is the "identif[ication] and place[ment of] qualified individuals with clients to perform assignments and projects under the terms of temporary service contracts." Dkt. 21-1, ¶ 5.  Plaintiff was one of Defendant Acro's "at-will employee[s]" who Defendant Acro "contracted to provide IT services to [Defendant] KBR[.]"  *Id*. at ¶ 6.  Defendant KBR was one of Defendant Acro's clients.  *Id*.

Plaintiff alleges that on February 21, 2019, he interviewed with Defendant Acro for employment. Dkt. 1, ¶ 19.  During that interview, he spoke with "Ms. Sara Ronken" ("Ronken"). *Id*.  During that interview, Plaintiff informed Ronken that he had a visual impairment. Dkt. 1, ¶ 11.  Having previously advised Ronken of a future surgery, during that interview, Plaintiff "reminded [ ] Ronken that he had an upcoming detached retina surgery and that he would only accept a position offered to him if they were willing to accommodate him and his medical needs."[1] *Id*.  Ronken responded that "[t]hey are flexible, and they are a family-oriented company," but that Ronken "would have to coordinate that with [her] staffing company if [Plaintiff was] offered the position." *Id*. at ¶ 21.[2]  Plaintiff's surgery was then scheduled for May 23, 2019, and Plaintiff notified Defendant Acro's "recruiting staff" of such. *Id*. at ¶ 20.

At some point after Plaintiff's interview, he was offered and he accepted a position with Defendant Acro's firm. *Id*. at ¶ 22.  On March 11, 2019, Plaintiff and Defendant Acro signed a Mutual Agreement to Arbitrate Claims ("Arbitration Agreement").  Dkt. 21-2, 2-3.  The Arbitration Agreement set forth that Defendant Acro and Plaintiff:

---

[1] The Court surmises that Plaintiff's use of the pronoun "they," Dkt. 1, ¶ 19, though plural, is a reference to Defendant Acro.

[2] Again, the court surmises that Plaintiff's use of the word "they," Dkt. 1, ¶ 21, is a reference to Defendant Acro.

2

> mutually consent[ed] to use binding arbitration, instead of going to court, for any "Covered Claims" that ar[o]se between [Plaintiff] and [Defendant Acro], its related and affiliated companies, and/or any current or former employee, officer or director of the Company or any related or affiliated company . . . . The "Covered Claims" subject to this [Arbitration] Agreement shall include all common law and statutory claims relating to [Plaintiff's] employment or candidacy for employment, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, unfair competition, and for violation of any laws forbidding discrimination, harassment, and retaliation on the basis of race, sex, sexual orientation, religion, national origin, age, marital status, disability, and other protected status. [Plaintiff] unders[tood] and agree[d] that arbitration is the only forum for resolving Covered Claims, and that both [Defendant Acro] and [Plaintiff] [ ] waive[d] the right to a trial before a judge or a jury in federal or state court in favor of arbitration for Covered Claims.
>
> \* \* \* \*
>
> The [Arbitration] Agreement shall be governed by the Federal Arbitration Act . . . .
>
> \* \* \* \*
>
> Both [Defendant Acro] and [Plaintiff] agree[d] that any disputes related to [Plaintiff's] employment relationship with [Defendant Acro] [would] be governed by the laws of the State of Michigan (the location of the Company's headquarters), without regard for conflict of laws principles.

Dkt. 21-2, 2. Plaintiff indicated that he "CAREFULLY READ THIS [ARBITRATION] AGREEMENT, THAT [HE] UNDERSTOOD ITS TERMS, AND THAT [HE] [ ] ENTERED INTO IT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR OTHER REPRESENTATIONS BY THE [DEFENDANT ACRO]." *Id*. at 3 (capitalization in original).

On April 15, 2019, Plaintiff's employment with Defendant Acro commenced. Dkt. 1, ¶ 23. That same day, he "began working for [Defendant] KBR under the belief that the company would accommodate his upcoming detached retina surgery." *Id*.

At some point, Plaintiff notified Defendants Acro and KBR that the date of his surgery was rescheduled from May 23, 2019, to June 20, 2019, and sent reminders to them about this date. *Id*.

On June 20, 2019, Plaintiff ultimately had surgery. *Id*. at ¶ 24.

3

At the request of one of Defendant KBR's employees, Plaintiff returned to work on July 1, 2019. *Id*. at ¶¶ 24-25. Upon returning to work, Plaintiff asked "to be provided with a larger computer monitor which would help him work more efficiently and effectively." *Id*. at ¶ 26. Plaintiff was told that he "would have to purchase his own specialized equipment." *Id*.

Soon thereafter, Plaintiff "notified [Defendant] KBR['s] leadership individually and during team meetings over the phone that he would have follow[-]up[,] post-op surgery appointments." *Id*. at ¶ 27. Plaintiff also sent "calendar invites" to various members of Defendant KBR's leadership team. *Id*.

After Plaintiff sent these several reminders, Plaintiff received an email from "Ms. Michelle Grey" ("Grey"), "referencing an upcoming training meeting scheduled for August 21, 2019."[3] *Id* at ¶ 28. When Plaintiff reminded Grey of Plaintiff's medical appointment that was also scheduled for August 21, 2019, Grey responded to Plaintiff indicating that Plaintiff "did not provide adequate notice." *Id*.

On August 21, 2019, Plaintiff chose to attend his medical appointment. *Id*. at ¶ 29. That same day, Plaintiff received a call from "Belinda Ruiz" ("Ruiz"), one of Defendant Acro's Human Resource representatives, indicating that Defendant KBR was "terminating its contract with [Plaintiff] because [Plaintiff] was not able to attend the work training scheduled for August 21, 2019." *Id*. at ¶ 30. The next day, Plaintiff received a "formal letter of termination via electronic mail" from Ruiz. *Id*.

---

[3] Based on the Complaint, it is unclear whether Grey is an employee of Defendant Acro or Defendant KBR, and whether the training meeting was scheduled with Defendant KBR or Defendant Acro.

B.   Procedural Background

On December 24, 2019, Plaintiff filed his Complaint in this Court alleging that Defendants Acro and KBR discriminated against him on the basis of his disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 12101, *et seq.*, and the Americans with Disabilities Act ("ADA"). *See generally id*. The purpose of this action, Plaintiff pleaded, was to "seek redress for [ ] unlawful discrimination on the basis of disability when [ ] Defendants refused to reasonably accommodate [ ] [P]laintiff's needs with regard to visual [impairment] and recovery from retina surgery." *Id*. at ¶ 1.

On April 8, 2020, Defendant Acro filed its Motion to Dismiss. Dkt. 20. Under ordinary circumstances, the deadline by which Plaintiff would have been required to oppose Defendant Acro's Motion to Dismiss would have been April 22, 2020. *See* Local Civil Rule 7(F)(1) ("Unless otherwise directed by the Court, the opposing party shall file a response brief and such supporting documents as are appropriate, within fourteen (14) calendar days after service . . . ."). However, in light of the recent emergence of the COVID-19 pandemic, this Court entered General Orders 2020-03 and 2020-07, under which Plaintiff had an additional 28 days by which to oppose Defendant Acro's Motion to Dismiss. No. 2:20-mc-00007, Dkt. 3, 4 ("All filing deadlines now set to fall between March 17, 2020, and March 31, 2020, are EXTENDED by fourteen days, unless the presiding judge in an individual case sets a different date by an order issued after the filing of this General Order.") (emphasis in original); No. 2:20-mc-00007, Dkt. 7, 5-6 ("In General Order 2020-03, this Court extended all filing deadlines set to fall between March 17, 2020, and March 31, 2020, by fourteen days, absent order of the presiding judge . . . . In light of the same concerns [set forth by General Order 2020-03], all filing deadlines now set to fall on or before April 14, 2020, are EXTENDED by fourteen days, unless the presiding judge in an individual case issues,

or has issues, an order <u>after</u> the filing of General Order 2020-03 directing that filings be submitted on or before April 14, 2020.") (emphasis in original). Accordingly, Plaintiff had until May 20, 2020, to oppose Defendant Acro's Motion to Dismiss (Dkt. 20). As of the date of this Order, Plaintiff has not opposed that motion.

Further, on April 26, 2020, Defendant KBR filed its Motion to Dismiss. Dkt. 26. Because this Court did not extend its filing deadlines beyond April 14, 2020, No. 2:20-mc-7, Dkt. No. 12, 6, Plaintiff had the typical 14 days by which to respond to Defendant KBR's Motion. *See* Local Civil Rule 7(F)(1). Thus, Plaintiff had until May 10, 2020, to oppose Defendant KBR's Motion to Dismiss (Dkt. 26). As of the date of this Order, Plaintiff has not so opposed that motion.

This matter is fully briefed and is now ripe for disposition. In light of Local Civil Rule 13(J), and Fed. R. Civ. P. 78, this Court finds that an oral hearing would not aid in the decisional process and the Court will rule upon the Motions based on the pleadings.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(3) allows for a party to move for dismissal for improper venue. Fed. R. Civ. P. 12(b)(3). Where a party moves for dismissal pursuant to a forum selection clause, such motions are "cognizable as motions to dismiss for improper venue." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006). An arbitration clause is "'specialized kind of forum-selection clause.'" *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n. 9 (4th Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). Therefore, Federal Rule of Civil Procedure 12(b)(3) is the proper vehicle by which a party may move to dismiss an action due to an arbitration clause.

Further, "because a motion under 12(b)(3) is a disfavored 12(b) motion," the United States Court of Appeals for the Fourth Circuit has determined that "a defendant will have to raise the

forum selection issue in [its] first responsive pleading, or waive the clause." *Sucampo Pharm., Inc.*, 471 F.3d at 549. In considering a 12(b)(3) motion "the court is permitted to consider evidence outside of the pleadings." *Aggarao*, 675 F.3d at 365-66. To defeat such a motion, the non-movant must make a "*prima facie* venue showing," and the facts must be viewed "in the light most favorable to the plaintiff. *Id*. at 366 (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); *Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 224 (2d Cir. 2011)).

### III.  ANALYSIS

In this matter, both Defendants Acro and KBR move this Court to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3). Dkt. Nos. 21; 27. Both Defendants contend that the Arbitration Agreement precludes this Court from hearing Plaintiff's claim of discrimination. Dkt. Nos. 21, 1; 27, 1-2. For the reasons that follow, this Court agrees, and the Court will address why Plaintiff should be compelled to arbitrate his claims against both Defendant Acro and Defendant KBR.

A. Whether Plaintiff Should Be Compelled to Arbitrate His Claims as to Defendant Acro

The "preeminent concern of Congress in passing" the Federal Arbitration Act ("FAA") "was to enforce private agreements into which parties had entered[.]" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). To be sure, the FAA requires "courts to enforce a wide range of written [a]rbitration [a]greements," inclusive of employment contracts, *Chronister v. Marks & Harrison, P.C.*, No. 3:11-CV-688, 2012 WL 966916, *1 (E.D. Va. Mar. 21, 2012), and "agreements to arbitrate discrimination claims brought pursuant to federal statutes, including Title VII of the Civil Rights Act." *Murray v. United Foods & Commercial Workers Intern. Union*, 289 F.3d 297, 301 (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001; *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999). The FAA "represents

'a liberal policy favoring arbitration agreements.'" *Murray*, 289 F.3d at 301 (citing *Moses H. Cone Mem'l Hop. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under such a policy, "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" *Murray*, 289 F.3d at 301. As such, the Supreme Court of the United States has determined that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their dispute and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).

In the case at bar, Plaintiff has filed this "action to seek redress for [ ] unlawful discrimination on the basis of disability when [ ] Defendants [allegedly] refused to reasonably accommodate [ ] [P]laintiff's needs with regard to visual [impairment] and recovery from retina surgery." Dkt. 1, ¶ 1. Defendant was employed by Defendant ACRO, a staffing agency, and under that employment agreement, provided services to Defendant KBR. *Id*. at ¶¶ 12, 13, 19. Plaintiff in his Complaint sets forth a single cause of action that alleges Defendants "discriminated against Plaintiff [ ] in violation of Title VII because of [Plaintiff's] need for ongoing treatment related to his medical condition and by their lack of accommodations for his vision impairment and needs arising out of retina surgery." *Id*. at ¶ 37. More specifically, Plaintiff has pleaded that after his surgery, he requested "larger, specialized computer monitors to make his work more efficient and easier[,]" and he was told that "he had to purchase his own equipment."[4] *Id*. at ¶ 8. Also, Plaintiff has pleaded that after having missed what appears to have been a work-related

---

[4] Plaintiff's Complaint does not clarify to whom Plaintiff made this request.

8

training,[5] in order to attend a post-operation, follow-up medical appointment, Plaintiff's employment with Defendant KBR was terminated.[6] *Id*. at ¶ 9.

After Plaintiff filed his Complaint in this Court, Defendants have offered an Arbitration Agreement whose signatories are Plaintiff and Defendant Acro's Senior Onboarding Specialist.[7] Dkt. 21-2, 2. Defendants contend that this action should be dismissed and that the parties be compelled to engage in arbitration as detailed in the Arbitration Agreement. Dkt. Nos. 21, 1-2; 27, 6 n. 14 (citing Dkt. 21-2, ¶¶ A, B).

The plain language of the FAA specifically provides, *inter alia*, that:

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Further:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . .

9 U.S.C. § 4.

To that end, in *Adkins v. Labor Ready, Inc.*, the Fourth Circuit opined that:

> [i]n the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written

---

[5] Plaintiff's Complaint does not clarify whether Defendant Acro or Defendant KBR required Plaintiff attend the "training" at issue.

[6] Plaintiff's Complaint does not clarify whether his employment with Defendant Acro was also terminated.

[7] The authenticity of the Arbitration Agreement is uncontested.

>agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmovant] to arbitrate the dispute."

303 F.3d 496, 501 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). In the case at bar, the first, third, and fourth *Adkins* elements are clearly satisfied. While the fourth *Adkins* element presents a closer case, the Court nonetheless finds that element is also met.

### i. The first, third, and fourth Adkins elements

The Court finds that in this case the first element has been satisfied because there is clearly a dispute between Plaintiff and Defendants, as evidenced by Plaintiff's Complaint.

The third *Adkins v. Labor Ready, Inc.*, element is also readily satisfied. 303 F.3d 496, 501 (4th Cir. 2002). Courts "in deciding to apply the FAA, [ ] need not identify any specific effect upon interstate commerce, so long as 'in the aggregate the economic activity in question would represent 'a general practice subject to federal control.'" *Rota-McLarty*, 700 F.3d at 697-98. The Supreme Court has opined that the FAA's requirement that the contract "involv[e] commerce" to be broadly construed to "mean a full exercise of constitutional power . . . . signal[ing] [Congress'] intent to exercise [ ] [its] commerce power to the full." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995).

While the Fourth Circuit has "held that the FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction[,]" *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012), Defendants in this case argue that the third *Adkins* element is satisfied. Defendants maintain that the third element has been met because "Plaintiff, a Virginia resident, executed the Arbitration Agreement in connection with his employment with [Defendant] Acro, a Michigan company, to provide

contracted IT support to [Defendant] KBR, a limited liability company with its headquarters in Texas." Dkt. 21, 7; *see also* Dkt. 21, 6 (arguing the same). Plaintiff, who has not filed an opposition to the Motions, thereby has not contested this point. Yet, the facts alleged by Defendants are fairly similar to those at issue in *Blount v. Northrup Bruman Info. Tech. Overseas, Inc.*, where this Court determined that the third *Adkins* element was met. No. 1:14-cv-919, 2014 WL 5149704, at *4 (E.D. Va. Oct. 14, 2014) ("The transaction is related to interstate or foreign commerce, as [the plaintiff] is a Georgia resident employed by a Virginia company and worked overseas."). Thus, the Court is persuaded by Defendants' argument that the third *Adkins* element is satisfied.

This Court also finds that the fourth *Adkins*, element is met. 303 F.3d at 501 (providing that to compel arbitration under the FAA, a party must demonstrate, *inter alia*, "the failure, neglect or refusal of the [nonmovant] to arbitrate the dispute . . ."). Evidence of this failure or neglect to arbitrate is established in that both Defendants' counsel have reached out to Plaintiff's counsel concerning arbitration in connection with this matter, and, to this Court's knowledge, Plaintiff's counsel simply has not responded. Dkt. 21, 3 ("On March 31, 2020, Aletha Brinkerhoff . . . , General Counsel for [Defendant] Acro, emailed Plaintiff's counsel a copy of the Arbitration Agreement and requested that Plaintiff stipulate to dismissal of his Complaint without prejudice . . . . Plaintiff's counsel did not respond to the email.") (citing Dkt. 21-2, ¶¶ 7-8); Dkt. 27, 1 ("Indeed, on March 16, 2020, undersigned counsel for [Defendant] KBR emailed Plaintiff's counsel to request that Plaintiff voluntarily agree to arbitrate his claim, but Plaintiff's counsel has not responded as of the date of the instant motion."). Nor has Plaintiff responded to the Motions concerning arbitration after having filed an action in this Court despite the plain language of the

11

Arbitration Agreement. Thus, in addition to being unresponsive to pleadings obligations in this Court, it appears that Plaintiff has either failed, neglected, or refused to arbitrate the dispute.

*ii. The second <u>Adkins</u> element*

While the second *Adkins* element presents a closer case, this Court finds that this requirement has also been satisfied. 303 F.3d at 501 (providing that to compel arbitration under the FAA, a party must demonstrate, *inter alia*, "a written agreement that includes an arbitration provision which purports to cover the dispute.").

To this end, it appears that the Arbitration Agreement is enforceable. "Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998). In reaching its judgment on the issue, courts should "apply 'ordinary state-law principles that govern the formation of contracts.'" *Id*. (quoting *First Operations of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances."[8] *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, No. 3:12-cv-00146, 2012 WL 1415632, at *3 (E.D. Va. Apr. 23, 2012) (citing *Colgan Air, Inc. v. Ratheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007)).

---

[8] The unusual circumstances to which the Court in *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, referred, include situations in which "the contract at issue . . . is 'unfair or unreasonable, or [ ] affected by fraud or unequal bargaining power,' *Paul Bus. Sys., Inc. v. Cannon U.S.A., Inc.*, 240 Va. 337, 342 (1990), or (b) there is some indication that the parties did not clearly intend for the designated law to govern the terms of the contract." No. 3:12-cv-00146, 2012 WL 1415632, at *3 (E.D. Va. Apr. 23, 2012) (citing *Senture, LLC. v. Dietrich*, 575 F. Supp. 2d 724, 727 (E.D.Va.2008) (citation omitted)). As set forth below (*infra*, p. 14), such circumstances do not appear to be present in the case at bar.

Here, Defendant Acro has presented to the Court the Arbitration Agreement to which Defendant Acro's Senior Onboarding Specialist and Plaintiff are signatories. Dkt. 21-3. The Arbitration Agreement provides in relevant part, that the parties:

> mutually consent to use binding arbitration, instead of going to court, for any "Covered Claims" that arise between [Plaintiff and Defendant Acro], its related and affiliated companies, and/or any current or former employee, officer or director of the Company or any related or affiliated company . . . . Both [Plaintiff and Defendant Acro] agree[d] that any disputes related to [Plaintiff's] employment relationship with [Defendant Acro] will be governed by the laws of the State of Michigan (the location of [Defendant Acro's] headquarters), without regard for conflict of law principles.

Dkt. 21-2. Accordingly, in light of this choice of law clause, and recognizing Virginia's perspective on such provisions, *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, No. 3:12-cv-00146, 2012 WL 1415632, at *3 (E.D. Va. Apr. 23, 2012), this Court is obligated to apply Michigan law to determine whether the Arbitration Agreement is enforceable.

It is uncontested that under Michigan law, "[t]he essential elements of a valid contract are the following: '(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *Hess v. Cannon Twp.*, 265 Mich. App. 582, 592 (Mich. Ct. App. 2005) (citing *Thomas v. Leja*, 187 Mich. App. 418, 422 (Mich. Ct. App. 1991) (citations omitted)).

Here, the parties appear competent to contract. Plaintiff is an adult and Defendant Acro appears at this juncture to be a lawfully-formed business entity. Dkt. 1, ¶¶ 11, 12.

It also appears that the Arbitration Agreement is "a proper subject matter," as Michigan state courts, like many other courts, have determined that arbitration agreements are suitable for contracting. *See e.g. Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 128-35 (Mich. Ct. App. 1999).

13

The requirements that there be legal consideration and mutuality of obligation are also present here. In *Mazera v. Varsity Ford Mhmt. Servs., LLC*, the United States Court of Appeals for the Sixth Circuit determined that there was sufficient consideration and "therefore a valid contract" where an employment contract "contain[ed] reciprocal obligations for both parties[.]" 565 F.3d 997, 1002 (6th Cir. 2009). Similar to *Mazera*, in this case, the obligations of Plaintiff and Defendant Acro are also reciprocal under the employment contract.

Further, under the Arbitration Agreement, both Plaintiff and Defendant Acro quite literally "mutually agreed" as the Arbitration Agreement specifies that Plaintiff and Defendant Acro "mutually constent[ed] to use binding arbitration . . . for any 'Covered Claims'" arising between them. Dkt. 21-2, 1. Mutual agreement is further evidenced by the signatures of Plaintiff and Defendant Acro's Senior Onboarding Specialist. Dkt. 21-3. Thus, under Michigan law, the Arbitration Agreement is enforceable.

Further, as this Court has previously noted (*supra*, p. 12), the Supreme Court has opined that "[a]n [otherwise valid] arbitration agreement may be found unenforceable only if the party resisting arbitration can prove a generally applicable contract formation defense, such as fraud, duress, or unconscionability." *Blount*, 2014 WL 5149704, at *4 (citing *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011)). Just as this Court found in *Blount*, here Plaintiff "[i]n h[is] [C]omplaint, which is Plaintiff's only operative filing before this Court, [ ] has made no allegation that any of these contract defenses apply. Nor does [ ]he allege that [ ]he did not voluntarily sign the [Arbitration A]greement. Therefore, the [A]rbitration [A]greement is valid and enforceable." 2014 WL 5149704 at *4.

Furthermore, the scope of the Arbitration Agreement "purports to cover the dispute," as required under the second *Adkins* element. The Arbitration Agreement requires "binding

14

arbitration" for "any 'Covered Claims.'" Dkt. 21-2, 2. "Covered Claims" under the Arbitration Agreement "include all common law and statutory claims relating to [Plaintiff's] employment or candidacy for employment, including, but not limited to any claim for . . . violation of any laws forbidding discrimination . . . on the basis of . . . disability." *Id.* Further, the Arbitration Agreement provides that "arbitration is the only forum for resolving [such] Covered Claims, and that both [Defendant Acro] and [Plaintiff] [ ] waive the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims." *Id.* In the instant matter, Plaintiff alleges that Defendants have discriminated against him on the basis of his disability, visual impairment, in violation of Title VII of the Civil Rights Act and the Americans with Disabilities Act. Dkt. 1, ¶¶ 11, 36-42. Because the Arbitration Agreement sets forth that Plaintiff and Defendant Acro have contracted to arbitrate claims "for . . . violation of any laws forbidding discrimination . . . on the basis of . . . disability," Dkt. 21-1, 2, as Plaintiff alleges in his Complaint, this Court finds that the scope of the Arbitration Agreement does, in fact, cover the dispute before this Court.

For the aforementioned reasons, each of the *Adkins* elements are satisfied, and the Court finds that Plaintiff must be compelled to arbitrate his claims against Defendant Acro.

B. Whether Plaintiff Should Be Compelled to Arbitrate His Claims as to Defendant KBR

As noted above, the signatories to the Arbitration Agreement were Plaintiff and Defendant Acro. Dkt. 21-2, 3. Nevertheless, Defendant KBR, a non-signatory to the Arbitration Agreement, seeks to compel Plaintiff to arbitrate his claim. Dkt. 27, 7. Defendant KBR contends that he may do so via the doctrine of equitable estoppel. *Id.* at 7-8.

The Supreme Court has opined that "[g]enerally, in the arbitration context, 'equitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in

asserting its claims against the nonsignatory." *GE Energy Power Conversion France SAS, Corp. v. Outokupu Stainless, USA, LLC*, 140 S. Ct. 1637, 1644 (2020) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (finding that the FAA allows a non-signatory to an arbitration agreement to enforce an arbitration agreement pursuant to state law doctrine of equitable estoppel)).

Again, since "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances[,]" *Edwards Moving & Rigging, Inc.*, 2012 WL 1415632, at *3, and because the Arbitration Agreement contains a provision indicating that Michigan law is to be applied in this context, Dkt. 21-2, 2, this Court will apply Michigan state law to determine whether Defendant KBR may compel arbitration through the doctrine of equitable estoppel.

"Courts in the Eastern District of Michigan [and Michigan state courts] have applied equitable estoppel in allowing non-signatories to compel arbitration." *PFS Invs., Inc. v. Imhoff*, No. 11-10142, 2011 WL 1135538, at * 8 (E.D. Mich. Mar. 25, 2011) (citing *Simpson v. LifeNet, Inc.*, No. 09-12228-BC, 2020 WL 86328, at * 5 (E.D. Mich. Jan. 5, 2010)); *see also Detroit Police & Fire Ret. Sys. v. GSC CDO Fund Ltd.*, No. 289185, 2010 WL 1875758, at * 7 (Mich. Ct. App. May 11, 2010) (finding that the "plaintiff should be estopped from arguing that its claims against any nonsignatories to the arbitration agreement are not subject to arbitration[,]" where the plaintiff's complaint involve[d] "substantially interdependent and concerted misconduct by both the non-signator[ies] and one or more of the signatories to the contract."). For example, in *Simpson v. LifeNet, Inc.*, the United States District Court for the Eastern District of Michigan, adopted and overruled objection to the Magistrate Judge's recommendation "that the [c]ourt grant [the defendant's] [] motion to dismiss based upon an arbitration agreement between [the plaintiff] [ ]

and her former employer . . . ." No. 09-12228-BC, 2010 WL 86328, at *1 (E.D. Mich. Jan. 5, 2010). The court commented that one of the objections raised by the plaintiff therein was that "the report and recommendation should be rejected because [the] [d]efendant admitted it was not a signatory to the agreement . . . ." *Simpson*, 2020 WL 86328, at * 1. In reaching its conclusion, that court held that "[a] plaintiff, who is the signatory to a contract with an arbitration provision is estopped from suing nonsignatory defendants for claims that arise out of and relate directly to the contract, as long as arbitration is appropriate.'" *Id.* at * 2 (citation and internal quotations omitted).

Here, Plaintiff is a signatory to the Arbitration Agreement. Dkt. 21-2, 3. Defendant KBR is a non-signatory. Plaintiff's claim of discrimination in violation of Title VII of the Civil Rights Act and the ADA, "arise out of and relate directly to" the Arbitration Agreement. This is so because the Arbitration Agreement expressly provides that the claims subject to arbitration "*shall* include . . . any claim for violation of any laws forbidding discrimination . . . on the basis of . . . disabilities, and other protected status." *Id.* Accordingly, this Court finds that under the doctrine of equitable estoppel, Defendant KBR may compel Plaintiff to arbitrate the claim that he raises.

## C. The Proper Remedy

Both Defendants Acro and KBR maintain that this Court should either stay all proceedings in the matter pending arbitration or, in the alternative, dismiss the matter for improper venue under Rule 12 (b)3. Dkt. Nos. 21, 1; 27, 1. Thus, this Court is tasked with determining which remedy is most appropriate under the circumstances.

Turning first to the plain language of the FAA, § 3 of that act expressly provides:

[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration

17

    has been had in accordance with the terms of the agreement, providing the applicant
    for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, the Fourth Circuit considered whether § 3 prohibits courts from dismissing actions where a written agreement between parties required arbitration. 252 F.3d 707, 709-10 (4th Cir. 2001). The Fourth Circuit provided that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

  In reaching this determination, the Fourth Circuit cited to the Fifth Circuit's decision in *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). In *Alford*, the Fifth Circuit considered the question of whether a "district court's dismissal with prejudice of [the plaintiff's] claims is contrary to the precise terms of Section 3 of the [FAA]." 975 F.2d at 1164. The Fifth Circuit interpreted § 3 to mean that a district court "may not deny a stay" "upon a showing that the opposing party has commenced suit 'upon any issue referable to arbitration under an agreement in writing for such arbitration . . . .'" *Alford*, 975 F.2d at 1164. The court opined that "[t]his rule, however, was not intended to limit dismissal of a case in proper circumstances." *Id*. "The weight of authority clearly supports dismissal of the case when *all* of the issued raised in the district court must be submitted to arbitration." *Id*. (emphasis in original) (citing *Sea–Land Serv., Inc. v. Sea–Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988); *Hoffman v. Fidelity and Deposit Co. of Maryland*, 734 F. Supp. 192, 195 (D.N.J. 1990); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa.1991)).

In this case, "*all* of the issued raised" must be submitted to arbitration. As noted in the foregoing analysis, (*supra*, p. 7-17), Plaintiff brings a single claim of discrimination alleging Defendants violated Title VII of the Civil Rights Act and ADA, Dkt. 1, ¶¶ 36-42, and pursuant to the Arbitration Agreement, "arbitration is the only forum for resolving" such a claim. Accordingly, the Court finds that dismissal of the Complaint with prejudice is the proper remedy.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby ORDERED that the Motions (Dkt. Nos. 20; 26) are GRANTED;

IT IS FURTHER ORDERED that the parties proceed in arbitration in accordance with the terms of the Arbitration Agreement (Dkt. 21-2); and

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED, with prejudice.

It is SO ORDERED.

Alexandria, Virginia
July 9, 2020

/s/
Rossie D. Alston, Jr.
United States District Judge